UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMI ZUCCHERO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HEIRLOOM ROSES, INC.,<br><br>　　　　　Defendant. | Case No.  22-cv-00068-KAW<br><br>**ORDER RE SUPPLEMENTAL BRIEFING ON MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 56 |

The Court has reviewed Plaintiff's motion for preliminary approval, and hereby orders the parties to provide a joint supplemental brief on the following issues.  The supplemental briefing shall be filed no later than **October 6, 2023**.  The hearing on Plaintiff's motion for preliminary approval is CONTINUED to **November 2, 2023** at **1:30 p.m.**

### A.　Range of Reasonableness

At the preliminary approval stage, courts in this district "have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness." *Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted).  In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiff's expected recovery balanced against the value of the settlement offer." *Id.*; *see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1120-21 (N.D. Cal. 2016).  This determination "requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Cotter*, 176 F. Supp. At 936.  Furthermore, the Ninth Circuit has recognized that where no class has been formally certified, "there is an even greater potential for a breach of fiduciary duty owed the class during

settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23€ before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Signs of collusion that the Court must consider include: (1) whether counsel receives a disproportionate distribution of the settlement, (2) where the parties negotiate a "clear sailing" provision for payment of attorneys' fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to the defendants. *Id.*

In the instant case, Plaintiff asserts negligence and breach of implied contract claims based on a security breach of Defendant's website around February to October 2021. (*See* Pl.'s Mot. for Prelim. Approval at 1, Dkt. No. 56.) Under the Settlement Agreement, it appears no settlement fund will be created; instead, class members who submit claims will receive up to $200 for unreimbursed, unauthorized, or fraudulent charges, as well as out-of-pocket expenses proximately caused by the security breach. (*Id.* at 3.) The Settlement Agreement also requires that Defendant make various security enhancements, such as requiring strong passwords and two-factor authentication, requiring third-party vendors and users to undergo regular security awareness training, protecting sensitive data using encryption and other measures, and migrating to the Shopify platform. (*Id.*)

Again, there does not appear to be a common fund in this case; rather, it seems Defendant will simply pay any claims that are made and accepted, with no minimum amount to be set aside for the class. The Court requires supplemental briefing as to whether such a settlement structure has been approved before, *i.e.*, where there is no specific settlement fund. While Plaintiff argues that the claims process proposed in this case has been used in other data breach cases, none of those cases appear to involve *no* settlement fund. *See In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *164 (N.D. Ga. Mar. 17, 2020) ($380.5 million minimum settlement fund); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939, at *148 (N.D. Cal. July 22, 2020) ($117.5 million settlement fund); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ($115 million settlement fund).

Further, Plaintiff does not provide an estimate of what the expected value of this settlement will be, such as the expected number of claims or the likely amount of the individual payments. *Contrast with Cottle v. Plaid Inc.*, 340 F.R.D. 356, 374 (N.D. Cal. 2021) (concerning a settlement agreement that would create a $58 million settlement fund, with estimated claim rates of 1-4% and estimated individual payments between $10 to $39); *see also* N.D. Cal. Procedural Guidance for Class Action Settlements ¶ 1(f) (for settlements involving claim forms, requiring information on the estimated claim rate "in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples"). Plaintiff also does not provide an estimate of what Plaintiffs' expected recovery would have been should the case have been successful. Thus, it is unclear how the Court is to determine whether this case falls within the range of reasonableness, particularly when it seems that Defendant is not required to create a settlement fund of any specific amount. For example, if no or few claims are expected, the monetary value of the case would appear to be minimal. Likewise, if Plaintiffs' expected recovery would not have been high due to the unlikelihood of significant (or any) damages, then the monetary value of the case would not have needed to be high. It is also not clear what the value of the proposed security enhancements are, and thus the Court cannot determine if they provide meaningful value to the class. *Compare with In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939, at *46 (N.D. Cal. July 22, 2020) (explaining that Defendant was committing up to $66 million per year to its information security budget).

It is also not clear why a $200 limit is being imposed, or why class members are limited to two hours of time spent responding to the data breach. The parties should explain the reasoning for such limitations. Further, the parties should explain why no monetary recovery should be provided to account for the future risks that the class's information will be used, or to otherwise prevent possible future use of such data, *e.g.*, through credit monitoring.

In addition, Plaintiff does not address the specific strengths and weaknesses of Plaintiff's case. Plaintiff refers to the general risks such as having a large class, "complicated and technical facts," "a well-funded and motivated Defendant," and "contested central issues relating to class

3

1  certification, liability, and damages," but Plaintiff does not provide sufficient detail or legal
2  analysis as to what these issues are and how much risk they create as to the merits of this action.
3  (*See* Pl.'s Mot. for Prelim. Approval at 9.)

### B. Released Claims

The Court requires clarification as to what claims are being released. In the motion for preliminary approval, Plaintiff states that the class will release all Released Claims and Unknown Claims, "even if unrelated to the Released Claims." (Pl.'s Mot. for Prelim. Approval at 6.) The Settlement Agreement likewise defines "Released Claims" as "any and all claims . . . whether known or unknown (including Unknown Claims) . . . that the Settlement Class Members . . . had, have or may have against Heirloom or the Released Parties that result from, arise out of, are based upon, or relate to the Data Security Incident." (Cole Decl., Exh. A ("Settlement Agreement") ¶ 1.29.) This "includes all claims asserted or that could have been asserted in the Litigation . . . arising out of, based upon or related in any way to the Data Security Incident." (*Id.*) The Settlement Agreement, however, then appears to define "Unknown Claims" as "any of the Released Claims that *Representative Plaintiff* does not know or suspect to exist in her favor at the time of the release of the Released Parties[.]" (Settlement Agreement ¶ 1.41.) It further provides that "Settlement Class Members other than Representative Plaintiff shall only be deemed to have released those claims asserted in the Complaint or which could have been asserted in the Complaint." (Settlement Agreement ¶ 1.41.) In other words, the Settlement Agreement appears to contemplate that the class members' "Released Claims" include "Unknown Claims," but the definition of "Unknown Claims" appears to be limited to the Representative Plaintiff. The parties will need to explain what the precise scope of the released claims will be for the class.

### C. Other Cases Affected by the Settlement

The parties shall identify whether there are any other cases that will be affected by the settlement, including an explanation of what other claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, and whether counsel in those cases participated in the settlement negotiations. If there are no such cases, the parties should so state.

4

### D. Class Action Fairness Act ("CAFA") Notice

CAFA requires that notice of a settlement be given to the appropriate government officials. 28 U.S.C. § 1715(b). The parties should address whether CAFA notice is required and, if so, when it will be given.

### E. Attorney's Fees and Costs

Plaintiff's counsel intends to seek an award of $198,500. (Settlement Agreement ¶ 9.1.) To assess the fee request, even for purposes of preliminary approval, the Court requires information as to the lodestar claimed, *i.e.*, the number of hours incurred in the case, the hourly rates claimed, and any multiplier being sought. (*See* N.D. Cal. Procedural Guidance for Class Action Settlements ¶ 6.)

### F. Class Notice (Cole Decl., Exhibit C)

#### i. What Claims are Settlement Class Members Giving Up Under the Settlement? (Page 3)

The Class Notice states: "The claims that Settlement Class Members are releasing are described in Section 1.30 of the Class Settlement Agreement and Release and the persons and entities being released from those claims are described in Section 1.31 of the Class Settlement Agreement and Release." (Class Notice at 3.) It appears, however, that Settlement Agreement ¶ 1.29 defines the "Released Claims," while ¶ 1.30 defines the "Released Parties."

#### ii. How Do I Object to the Settlement? (Page 5)

Settlement Agreement ¶ 6.1 and the Procedural Guidance for Class Action Settlements require that the notice instruct class members who wish to object to the settlement to send their written objections to the Court only. The Class Notice, however, requires that objections be mailed to the Court, Settlement Class Counsel, and Defendant's counsel. The objection procedure should be updated to be consistent with the Settlement Agreement and the Procedural Guidance for Class Action Settlements.

#### iii. Typos

The Court also notes several typos through the Class Notice, including in § 8 (". . . which they believe in good faith were fairly traceable to the Data Security Incident**, They** may file . . .")

5

1   and § 23 ("If the Court approves the settlement and no appeal is **takenthe** Claims Administrator . .

2   ."). The parties should review the Class Notice and correct all typos.

3       IT IS SO ORDERED.

4   Dated: September 14, 2023

5                                                       KANDIS A. WESTMORE

6                                                       United States Magistrate Judge

United States District Court
Northern District of California